HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SADAM SHINWARI and SAIRING
YUNEIXI TOVAR FIGUEROA,

Petitioners,

v.

LAURA HERMOSILLO, *et al.*,

Respondents.

CASE NO. 2:26-cv-00009-RAJ

ORDER

## I.    INTRODUCTION

THIS MATTER comes before the Court on Petitioners Sadam Shinwari and Sairing Yuneixi Tovar Figueroa's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has reviewed the petition, the submissions in support of and in opposition to the petition, and the balance of the record. For the reasons set forth below, the Court **GRANTS** Petitioners' petition.

## II.    BACKGROUND

Mr. Shinwari and Ms. Tovar Figueroa each entered the United States at a port of entry and were paroled into the United States pending the resolution of their immigration proceedings. In December 2025, Immigration and Customer Enforcement ("ICE") arrested each Petitioner without notice and hearing, and transferred them to the Northwest

ORDER – 1

Immigration Processing Center ("NWICP") where they are currently detained. The Petitioners challenge their re-detention as violations of procedural due process.

**A.    Petitioner Shinwari**

Mr. Shinwari is a citizen of Afghanistan. Dkt. # 8 ¶ 4. He entered the United States lawfully on October 15, 2021 under Operations Allies Welcome, a program established to support vulnerable Afghans, including those who worked alongside the United States and its allies in Afghanistan. Dkt. # 2 ¶ 3. Mr. Shinwari was initially granted parole until October 14, 2023; the term was later renewed until October 14, 2025. *Id.* In or around January 2022, Mr. Shinwari applied for asylum. *Id.* ¶ 5. That application remains pending. *Id.* Sometime in 2023, Mr. Shinwari also applied for Temporary Protected Status ("TPS"). *Id.*; Dkt. # 8 ¶ 5. That application remains pending as well. Dkt. # 2 ¶ 5. On April 16, 2025, Mr. Shinwari attended an asylum interview with U.S. Citizenship and Immigration Services ("USCIS"), but no decision was made that day. *Id.*

On December 17, 2025, Mr. Shinwari and his attorney attended a second scheduled interview with USCIS in Portland, Oregon. *Id.* ¶ 6. During the interview, the asylum officer directed Mr. Shinwari to go into another room where three men were waiting. *Id.* ¶ 8. One man was dressed in all black and the other two were wearing tactical vests. *Id.* Upon entering the room, the two men in tactical vests handcuffed Mr. Shinwari. *Id.* ¶ 9. Mr. Shinwari's attorney asked the man wearing black why they were arresting Mr. Shinwari, and the man said it was "because his parole expired and he didn't have TPS." *Id.* ¶ 10. No other explanation was given. *Id.* Mr. Shinwari was transported to NWICP where he is currently detained. *Id.*

On the day of his arrest, Mr. Shinwari was issued a Notice to Appear and placed in removal proceedings. Dkt. # 8 ¶ 9. Mr. Shinwari appeared for a hearing on January 15, 2026, during which the immigration judge granted Mr. Shinwari's request to continue the case to January 26, 2026. *Id.* ¶ 10. Mr. Shinwari also has a pending criminal matter arising out of a July 14, 2025 incident in which he was arrested for harassment and displaying a

ORDER – 2

weapon. *Id.* ¶ 6. The jury trial in that case is also scheduled for January 26, 2026. Dkt. # 2 ¶ 11. The Court does not have information regarding the resolution of either the immigration hearing or the criminal trial. Mr. Shinwari has no criminal convictions and complied with the conditions of his parole prior to its expiration. *Id.* ¶¶ 11, 4.

**B.    Petitioner Tovar Figueroa**

Ms. Tovar Figueroa is a citizen of Venezuela. Dkt. # 3 ¶ 1. She and her children fled the country due to fear of persecution by a paramilitary group. *Id.* She entered the United States in June 2023. *Id.* ¶ 3. At the time of entry, she attended an appointment with an immigration officer. *Id.* She was paroled into the United States for two years and scheduled to appear before an immigration judge in October 2027. *Id.* In or around April 2024, she applied for asylum and TPS. *Id.* ¶ 5. She also eventually applied for work authorization. *Id.*

On December 2, 2025, immigration officers arrived at Ms. Tovar Figueroa's home for the purpose of detaining her partner, but when they saw Ms. Tovar Figueroa, they detained her as well. *Id.* ¶ 6. She was transferred to NWICP where she remains today. *Id.* ¶ 7. Her three children are currently staying with a friend. *Id.* She states she still fears returning to Venezuela and understands that her ex-partner, who was a target of the paramilitary group she fled from, has been killed. *Id.* ¶ 8. Ms. Tovar Figueroa has no criminal history and complied with the terms of her release prior to its expiration. *Id.* ¶¶ 8, 4.

On January 8, 2026, an immigration judge ordered Ms. Tovar Figueroa's removal to Ecuador pursuant to the Asylum Cooperative Agreement with Ecuador. Dkt. # 8 ¶ 18. The parties agree the order is subject to appeal and not administratively final. Dkt. # 7 at 5 n.2; Dkt. # 10 at 2 n.1.

### III.  LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). The district courts' habeas jurisdiction

ORDER – 3

includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may seek habeas relief by showing that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## IV.  DISCUSSION

The Fifth Amendment forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)). Due process is "flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (quoting *Morrissey v.* Brewer, 408 U.S. 471, 481 (1972)). It "applies to all 'persons' within the United States, including [noncitizens], whether their presence here in lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

In *Mathews*, the Supreme Court set out three considerations for determining whether a particular governmental action comports with due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335. In *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), the Ninth Circuit assumed without deciding that the *Mathews* test applies in the immigration detention context. *Id.* at 1207. District courts have subsequently applied the *Mathews* test in this manner. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4

ORDER – 4

(W.D. Wash. 2025) (collecting cases). The parties agree that it applies here. Dkt. # 1 ¶ 51; Dkt. 7 at 8–10.

As an initial matter, the Court rejects Respondents' argument that Petitioners' re-detention is lawful because the applicable statute and regulation do not require a pre-detention hearing.[1] As multiple courts in this district have found in similar cases, "even if a particular statute or regulation does not require a pre-arrest hearing in these specific circumstances, this does not mean such a hearing is not required by Due Process." *Gregorio Ordoñez v. Bondi*, No. 25-cv-2356, 2025 WL 3852444, at *4 (W.D. Wash. Dec. 19, 2025), *report and recommendation adopted*, 2026 WL 30022 (W.D. Wash. Jan. 5, 2026); *see E.A. T.-B.*, 795 F. Supp. 3d at 1323 ("But Petitioner does not claim to be entitled to a hearing consistent with a particular statute:  he argues that the Due Process Clause requires it."); *P.T. v. Hermosillo*, No. 25-cv-2249, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected."); *Francois v. Wamsley*, No. 25-cv-2122, 2025 WL 3063251, at *3 (W.D. Wash. Nov. 3, 2025) ("Any argument that ICE acted within its authority has no [effect] on a claim contending that detention violates Constitutional Due Process."); *Kumar v. Wamsley*, No. 25-cv-1772, 2025 WL 2677089, at *2 n.2 (W.D. Wash. Sept. 17, 2025) ("Because Petitioner claims he was detained in violation of his constitutional right to due process, Respondents' contention that 'ICE acted within its lawful authority' . . . does not affect Petitioner's likelihood of success on the merits for his constitutional due process claim.").

---

[1] Respondents state Petitioners are mandatorily detained pursuant to 8 U.S.C. § 1225(b) and Petitioners do not dispute this characterization in their traverse. Dkt. # 7 at 6; Dkt. # 10 at 3. The Court need not reach the question of whether Petitioners are detained pursuant to 8 U.S.C. § 1225 or § 1226 because in either case, the statute cannot replace the constitutional requirement of procedural due process.

ORDER – 5

Turning to the first *Mathews* factor, Petitioners have a strong interest in not being detained. The "interest in being free from physical detention by one's own government" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [due process] protects."). "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases). "Recently, courts throughout the Ninth Circuit have concluded that non-citizens who are released from ICE custody have a protected liberty interest under the Due Process Clause in remaining out of custody while their cases proceed." *Kumar*, 2025 WL 2677089, at *3 & n.3 (collecting cases).

Respondents argue Petitioners have a diminished liberty interest because "liberty interests of U.S. citizens and [noncitizens] are not coextensive." Dkt. # 7 at 9 (citing *Rodriguez Diaz*, 53 F.4th at 1206). However, "[w]hile Respondents are correct that non-citizens' liberty interests are not equivalent to those enjoyed by citizens . . . that does not negate Petitioner's liberty interest in not being detained." *Kumar*, 2025 WL 2677089, at *3. Respondents further argue Petitioners' interest "is tempered by the relatively short period of time that they were released." Dkt. # 7 at 9. But Mr. Shinwari lived in the community for over 4 years at the time of his re-detention and Ms. Tovar Figueroa did so for approximately two and a half years. Dkt. # 8 ¶¶ 4, 7, 11, 15. This is undoubtedly sufficient time to develop an interest in not being re-detained. "Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025).

ORDER – 6

Under the second *Mathews* factor, the procedures used to re-detain Petitioners created a high risk of an erroneous deprivation of liberty interests, and there is probable value in additional safeguards. Petitioners' re-detention appears arbitrary. *See Kumar*, 2025 WL 2677089, at *3 (finding second *Mathews* factor favored petitioner because his re-detention appeared arbitrary). Mr. Shinwari was paroled into the United States under Operations Allies Welcome, a program intended to help vulnerable Afghans who supported the United States during the War in Afghanistan. Dkt. # 2 ¶ 3. He complied with the terms of his parole, applied for asylum and TPS, and was arrested without notice while attending what he thought was an asylum interview. *Id.* ¶¶ 4–10.[2] Ms. Tovar Figueroa similarly complied with the terms of her parole and applied for asylum, TSP, and work authorization. Dkt. # 3 ¶ 4–6. She has no criminal history. *Id.* ¶ 9. It appears she was arrested in part because she was the wrong place at the wrong time: at home when immigration officers arrived for the purpose of arresting her partner. *Id.* ¶ 6; Dkt. # 8 ¶ 15. Additional safeguards, including notice and a meaningful opportunity to be heard before an immigration court, may have decreased the risk of arbitrary or otherwise unlawful detention.

Respondents' only argument is that "Petitioners had notice that their parole was only for a defined, brief period of time and could be revoked at any time." Dkt. # 7 at 9. However, "[t]hat the express terms of the parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide an individualized hearing prior to re-detaining the parolee." *Ramirez Tesara*, 800 F. Supp. 3d at 1136.

Finally, under the third *Mathews* factor, the government's interest in re-detaining Petitioners without additional procedures is low. The government does not argue Petitioners posed a flight risk, danger to the community, or otherwise required immediate

---

[2] Although Mr. Shinwari has a pending criminal matter, he has not been convicted of a crime. Dkt. # 2 ¶ 11. Respondents did not identify this incident as a reason for his re-detention either at the time of his arrest or in their return memorandum. *See id.* ¶ 10.

ORDER – 7

re-detention without procedural safeguards. They also do not argue that additional procedures would have imposed an unreasonable burden on the government. Instead, they state that the government has a strong interest in preventing noncitizens from remaining in the United States in violation of the law. Dkt. # 7 at 10. "Those interests are not threatened if a pre-deprivation hearing is required, however." *E.A. T.-B.*, 795 F. Supp. 3d at 1324. Respondents also argue the government "likewise has an interest in revoking parole and returning individuals to custody who violate their terms." Dkt. # 7 at 10. However, Respondents do not allege that either Petitioner violated the terms of their parole.

In sum, the Court finds that all three *Mathews* factors support a finding that Petitioners' re-detention violates procedural due process and require immediate release. Petitioners also seek an order enjoining their re-detention absent certain conditions. Dkt. # 1 at 12. The Court will adopt a similar relief formulation to those granted by other courts in this district. *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324 (ordering that petitioner "may not be re-detained until after an immigration court hearing is held (with adequate notice) to determine whether detention is appropriate"); *Francois,* 2025 WL 3063251 at *4 (ordering that petitioners "may not be re-detained until an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate.").

//
//
//
//
//
//
//
//
//
//
//

ORDER – 8

## V.   CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioners' Petition for Writ of Habeas Corpus.  Dkt. # 1.  The Court **ORDERS** that Respondents:

(1)   Shall immediately release Mr. Shinwari and Ms. Tovar Figueroa from custody;

(2)   Shall file with the Court a notice within 2 business days confirming Mr. Shinwari and Ms. Tovar Figueroa's release; and

(3)   Shall not re-detain Mr. Shinwari and Ms. Tovar Figueroa unless and until providing them with 10 days' written notice and a meaningful opportunity to be heard before an immigration judge to determine whether detention is appropriate.

Petitioners may file a fee petition within the deadlines set by the Equal Access to Justice Act.

Dated this 30th day of January, 2026.

The Honorable Richard A. Jones
United States District Judge

ORDER – 9